**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

**Michael Tubbs,**

Plaintiff,

**v.**

**Equifax Information Services LLC,**

Defendant.

Case No.: _______________

**JURY TRIAL DEMANDED**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I. PRELIMINARY STATEMENT**

1. This is an action for actual damages, statutory damages, punitive damages, and costs brought by Plaintiff Michael Tubbs ("Mr. Tubbs" or "Plaintiff") against Defendant

Equifax Information Services, LLC ("Equifax" or "Defendant") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").

2. Equifax violated 15 U.S.C. § 1681g(a)(1) by failing to clearly and accurately disclose all information in Plaintiff's consumer file when Plaintiff requested his consumer disclosure, despite Equifax possessing and regularly transmitting that data to commercial third-party purchasers of consumer reports.

3. Equifax violated 15 U.S.C. § 1681e(b) by preparing and selling consumer reports containing information that was materially inaccurate, including a credit card account on which the reported balance exceeded the stated credit limit, and an account on which the High Credit figure exceeded the stated Credit Limit—creating a false and misleading picture of Plaintiff's creditworthiness.

4. Equifax also violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation of disputed items, notwithstanding the fact that Plaintiff's report reflects active and completed dispute codes on multiple accounts, confirming Equifax had notice of the disputed information and yet failed to correct it.

5. Equifax's conduct was willful within the meaning of 15 U.S.C. § 1681n. Equifax has been on notice of its § 1681g(a)(1) disclosure obligations for over 25 years, since the Federal Trade Commission's Advisory Opinion to Darcy (June 30, 2000), and its systemic omission of the same categories of information across every account in Plaintiff's file confirms deliberate policy rather than isolated error.

## II. JURISDICTION AND VENUE

6. Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, which confers original federal jurisdiction for actions to enforce FCRA liability.

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law.

8. Venue is proper in this district because Plaintiff resides in Ypsilanti, Michigan, within the Eastern District of Michigan, and Equifax's acts and omissions complained of caused harm to Plaintiff within this district.

## III. PARTIES

9. Plaintiff Michael Tubbs is a natural person residing at 959 DeSoto Ave., Ypsilanti, Michigan 48198. Mr. Tubbs is a "consumer" as defined by 15 U.S.C. § 1681a(c).

10. Defendant Equifax Information Services, LLC is a Georgia limited liability company with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309.

11. Equifax is a "consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f) in that, for monetary fees and on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, using the facilities of interstate commerce—specifically the mail and internet.

12. As a nationwide CRA, Equifax is fully aware of its obligations under the FCRA.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's May 2026 Consumer Disclosure

13. On or about May 10, 2026, Plaintiff requested and received his consumer file disclosure from Equifax. That disclosure bears Confirmation No. 6130549094 and reflects a report date of May 10, 2026 (the "Disclosure").

14. Pursuant to 15 U.S.C. § 1681g(a)(1), upon receipt of Plaintiff's request, Equifax was required to "clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request."

15. The term "file" is defined by 15 U.S.C. § 1681a(g) to mean "all of the information on [the] consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."

16. The FTC Advisory Opinion to Darcy (June 30, 2000) ("Darcy Opinion") makes clear that a CRA which "always scrambles or truncates" or otherwise omits account data from a consumer file disclosure "does not technically comply with Section 609 because it does not provide 'accurate' (and perhaps not 'clear') disclosure of all information in the file."

17. A disclosure is insufficiently "clear" when it is "unclear such that the consumer cannot determine the accuracy of the information." Alexander v. Equifax Info. Servs., LLC, No. 2:17-cv-00302, 2018 WL 3025939, at *6 (D. Nev. June 18, 2018).

### B. The Systemic Pattern of Omitted, Blank, and Static-Placeholder Data

18. The Disclosure Equifax provided to Plaintiff contains scores of blank, missing, and internally conflicting data fields spread uniformly across every account in Plaintiff's file. This pattern is not random; it mirrors a known, systemic defect in Equifax's consumer-disclosure template, as described in the Keliikipi litigation (Keliikipi v. Equifax, Case No. 1:25-cv-00206-SASP-WRP (D. Haw. filed May 19, 2025)).

19. One of the most telling hallmarks of Equifax's systemic omission is the static placeholder date: a single Last Payment Date that is frozen identically in every row of a multi-month balance history table, regardless of whether payments were actually made in the intervening months. A static date that does not change from row to row cannot represent actual payment activity; it confirms that Equifax's disclosure template is simply not populating the field.

20. The following is an account-by-account inventory of the blank, missing, and static-placeholder fields Plaintiff identified in the Disclosure. This inventory will be attached as Exhibit C.

**C. Account-by-Account Inventory of Missing and Incomplete Information**

***Account 1: Citizens Bank, N.A. (*1173) — Credit Card, opened 09/24/2025***

21. The 24-Month History table for this account contains six (6) monthly rows covering November 2025 through April 2026. Across all six rows, the following fields are blank or carry static values: (a) the Scheduled Payment Amount column is blank for every row; (b) the Actual Payment Amount column is blank for every row except one; and (c) the

Last Payment Date column shows the identical static date of "10/26/2025" for every single row, including rows dated months after that date. A payment date of October 26, 2025 appearing in rows for November 2025, December 2025, January 2026, February 2026, March 2026, and April 2026 does not reflect actual payment activity—it is a static placeholder.

*Account 2: Apple Card – GS Bank USA (*3568) — Credit Card, Closed 02/13/2025*

22. This account carries Narrative Code 022 (Consumer Disputes—Reinvestigation in Process) and Code 167 (Consumer Disputes After Resolution), confirming Equifax had actual notice of disputed information. The Disclosure reflects a current balance of $1,208 against a Credit Limit of $1,300, and a High Credit figure of $1,403. The stated High Credit of $1,403 exceeds the stated Credit Limit of $1,300 by $103—a per se inaccuracy that creates an internally contradictory and materially misleading picture of this account's credit utilization. Additionally, the 24-Month History table provides only two (2) rows despite the account's 41 months of reported history. The Scheduled Payment Amount and Actual Payment Amount fields are blank for the most recent row (03/26).

*Account 3: CitiCards CBNA (*7186) — Flexible Spending Credit Card, opened 10/07/2021*

23. The 24-Month History table for this account spans twenty-three (23) rows from May 2024 through March 2026. The Scheduled Payment Amount field is blank for the majority of rows. Multiple rows lack an Actual Payment Amount entry. The Payment

History grid for years 2021 through part of 2024 shows "No Data Available" cells for numerous months, preventing Plaintiff from verifying the accuracy of this account's long-term payment history. This account has been open since October 2021—more than four years—yet the Payment History grid contains No Data symbols for the early years of the account.

*Account 4: COMENITYCAPITAL/SAKSCC (*2888) — Charge Account, opened 01/28/2022*

24. This account reports a Credit Limit of $1,000, but the High Credit column displays $0 for every single row across all eighteen (18) rows of its 24-Month History table. An account with a $1,000 credit limit and over four years of reported history showing $0 in the High Credit column constitutes a blank, incomplete field. The Scheduled Payment Amount, Actual Payment Amount, and Last Payment Date columns are blank for every row. The Date of Last Activity field is blank. This account contains in excess of seventy (70) blank data cells.

*Account 5: Citizens Bank, N.A. (*8839) — Credit Card, opened 08/01/2025*

25. The Payment History grid for 2025 shows multiple months with "No Data Available" symbols. The Scheduled Payment Amount column is blank for six of seven rows in the 24-Month History table. The Term Duration field is blank. The Activity Designator field is blank.

***Account 6: Navy Federal Credit Union (*9161) — Credit Card, opened 11/25/2021***

26. This account carries Narrative Code 022 (Consumer Disputes—Reinvestigation in Process), confirming Equifax had actual notice of a pending dispute. The account balance as of 04/20/2026 is reported as $7,541 against a stated Credit Limit of $7,500. The reported balance exceeds the stated credit limit by $41. This is a per se inaccuracy: reporting a balance that exceeds the account's credit limit without notation of an approved over-limit condition conveys to any third-party reviewer that the consumer is over-limit and in default, which is false on its face. The 24-Month History table provides only a single row (03/26) despite the account's 24 months of reviewed history. Twenty-three (23) or more monthly rows of payment history are missing from this disclosure entirely.

***Account 7: Wells Fargo Card Serv (*4265) — Credit Card, Charge Off, Closed***

27. This account carries Narrative Code 022 (Consumer Disputes—Reinvestigation in Process). It is reported with a Status of "Charge Off" and an Activity Designator of "Paid and Closed," yet the Payment History grid continues to show "CO" (Charge Off) notations for January and February of 2026—approximately two years after the charge-off date—despite the account being listed as "Paid and Closed." The continued reporting of Charge Off notations on an account listed as Paid and Closed is internally contradictory and materially misleading. The 24-Month History table contains no rows at all. The Scheduled Payment Amount, Actual Payment Amount, and Last Payment Date fields are entirely blank.

***Account 8: People Driven Credit Union (*2833) — Credit Card (Authorized User), opened 05/01/1996***

28. The 24-Month History table for this account spans twenty-three (23) rows. The Scheduled Payment Amount and Actual Payment Amount columns are blank for the overwhelming majority of rows. The Last Payment Date column shows "04/28/2023"—a date in 2023—appearing identically in fourteen (14) consecutive rows covering May 2024 through June 2025. This is a textbook static placeholder: a single date frozen across 14 monthly rows spanning over a year. It cannot reflect actual payment activity during that period. The Payment History grid for 2021 through portions of 2022 contains numerous "No Data Available" symbols.

***Account 9: Elan Fin Svcs/Fidelity (*1178) — Flexible Spending Credit Card, opened 10/08/2021***

29. The 24-Month History table for this account spans seventeen (17) rows. The Last Payment Date column displays the identical static date of "01/28/2025" in every single one of the seventeen rows—including rows covering months well before January 2025. The Scheduled Payment Amount field is blank for every row. The Actual Payment Amount field is blank for every row. A static date appearing identically in 17 consecutive monthly rows from May 2024 through March 2026 is a systemic placeholder, not a record of actual payment events.

***Account 10: Kikoff Lending, LLC (*HFVW) — Charge Account, opened 08/21/2021***

30. The 24-Month History table spans fifteen (15) rows. The Last Payment Date column shows the identical static date of "06/28/2022" in every single row—a date in 2022—appearing frozen across rows that cover 2024 and 2025. The Scheduled Payment Amount and Actual Payment Amount fields are blank for every row.

***Account 11: Genisys Credit Union (*1520) — Credit Card (Authorized User), opened 04/13/2021***

31. The header of this account listing reports the Balance field as blank (dashes) despite showing a monthly balance of $5,398 in the most recent 24-Month History row. The Date Reported is June 30, 2025—nearly a year before the report date of May 10, 2026—meaning Equifax has not updated this account's data in the disclosure for approximately eleven months while the account remains open and active. The Payment History grid for years 2023, 2024, and portions of 2025 shows numerous "No Data Available" symbols.

***Account 12: Discover Card (*3221) — Credit Card, opened 05/12/2025***

32. This account carries Narrative Code 022 (Consumer Disputes—Reinvestigation in Process). The 24-Month History table provides only a single row (05/25) despite the account having been open for seven months as of the report date. The Scheduled Payment

Amount, Actual Payment Amount, and Last Payment Date fields for that single row are blank. The Date of Last Activity field is blank. Six months of payment history are entirely missing from this account's disclosure.

**D. Aggregate Count of Missing and Incomplete Data Fields**

33. Based on Plaintiff's review of the Disclosure, Plaintiff's consumer file disclosure contains in excess of one hundred fifty (150) blank, missing, static-placeholder, or internally conflicting data fields spread across the accounts identified above. A complete itemized count will be provided in Exhibit C attached to this Complaint.

34. On information and belief, Equifax maintains complete and accurate data in its internal databases and transmits it to commercial third-party purchasers of consumer reports, while systematically withholding it from consumers' own file disclosures. This is the precise conduct condemned by the FTC Darcy Opinion.

**E. No Hard Inquiries — Disclosure Itself Establishes Standing**

35. Plaintiff's May 10, 2026 Disclosure reflects no hard inquiries during the report period. Standing under Article III, however, is established directly by the act of Equifax providing an incomplete file disclosure to Plaintiff in response to a specific request. The right to a complete and accurate consumer file disclosure under 15 U.S.C. § 1681g is a concrete, legally cognizable right. Equifax's failure to provide it is a concrete, particularized injury to Plaintiff's statutory right to know and evaluate what information

Equifax maintains in his file. See TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2205 (2021) (injury to a legally protected interest suffices for standing).

36. Additionally, Plaintiff's report reflects numerous soft inquiries by lenders including Citizens Bank, Navy Federal Credit Union, CitiCards CBNA, Capital One, RBS Citizens NA, and KeyBank, demonstrating that Equifax's file on Plaintiff is actively accessed by third-party creditors for account review purposes. Each such access to a file containing inaccurate data—including a balance in excess of the credit limit on the Navy Federal account—constitutes a dissemination of inaccurate information.

**F. Prior Dispute Notations — § 1681i Counts Available**

37. Plaintiff's Disclosure reflects Narrative Code 022 (Consumer Disputes—Reinvestigation in Process) on the following accounts: Apple Card (*3568), Navy Federal (*9161), Wells Fargo (*4265), Discover Card (*3221), FNB Omaha (*4736), and THD/CBNA (*6085). The Apple Card account additionally reflects Narrative Code 167 (Consumer Disputes After Resolution). These codes establish that Equifax had actual notice of prior disputes on these accounts and was required under 15 U.S.C. § 1681i to conduct a reasonable reinvestigation and to correct or delete unverifiable information.

38. Despite this notice, the Disclosure reflects ongoing inaccuracies on the disputed accounts, including: the balance-exceeds-limit inaccuracy on Navy Federal; the High Credit exceeds Credit Limit inaccuracy on Apple Card; and the continued Charge Off notation on the Paid and Closed Wells Fargo account. Equifax failed to correct these inaccuracies despite receiving and acknowledging the disputes.

**G. Actual Damages**

39. As a result of Equifax's violations, Plaintiff has suffered actual damages including, but not limited to: emotional distress, frustration, and mental anguish caused by Plaintiff's inability to review and verify the accuracy of his consumer file; loss of time spent attempting to decipher an incomplete and internally contradictory disclosure; impaired ability to identify and dispute inaccurate entries due to the absence of payment history and account details; and potential harm to creditworthiness caused by the reporting of a balance in excess of Plaintiff's Navy Federal credit limit.

## V. CAUSES OF ACTION

## COUNT I

## VIOLATION OF 15 U.S.C. § 1681g(a)(1)

### (Failure to Clearly and Accurately Disclose All Information in Consumer's File)

40. Plaintiff re-alleges and incorporates paragraphs 1 through 35 as if fully stated herein.

41. Section 1681g(a)(1) of the FCRA requires Equifax, "[u]pon request and proper identification of any consumer, [to] clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1).

42. The term "file" as used in § 1681g means "all of the information on [the] consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g).

43. Plaintiff requested his consumer file disclosure from Equifax in May 2026. Equifax provided the Disclosure described herein.

44. The Disclosure contained in excess of 150 blank, missing, static-placeholder, and internally conflicting data fields across at least twelve (12) separate accounts, as documented in detail in paragraphs 18 through 29 above and in Exhibit C.

45. A disclosure riddled with blank fields, missing payment histories spanning years of account activity, and static placeholder dates that cannot represent actual payment events does not "clearly and accurately disclose . . . [a]ll information" in Plaintiff's file. It is precisely the type of incomplete disclosure condemned by the FTC Darcy Opinion and the court in Alexander v. Equifax, 2018 WL 3025939.

46. On information and belief, Equifax possessed the complete data in its internal systems and transmitted it to commercial third-party purchasers of Plaintiff's reports, while systematically omitting it from Plaintiff's own disclosure.

47. Equifax's violation was willful within the meaning of 15 U.S.C. § 1681n and Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007). Equifax's conduct was objectively unreasonable for the following independently sufficient reasons: (a) The FTC issued the Darcy Opinion over twenty-five years ago, placing all CRAs on explicit notice that a systematic practice of omitting account data from consumer disclosures violates § 1681g(a)(1); (b) The identical pattern of omissions—blank Scheduled Payment Amount, blank Actual Payment Amount, static Last Payment Date, and missing monthly rows—

appearing uniformly across every account in Plaintiff's file confirms that this is a deliberate policy choice, not a random or isolated error, establishing that Equifax knowingly or recklessly disregarded its § 1681g(a)(1) obligations; (c) Pro se consumers are entitled to have their pleadings liberally construed, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and the face of the Disclosure itself demonstrates the scope of Equifax's knowing omissions.

48. Alternatively, Equifax's violation was negligent within the meaning of 15 U.S.C. § 1681o.

49. As a result of Equifax's violations of § 1681g(a)(1), Plaintiff is entitled to: (a) actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1); (b) statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A); (c) punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and (d) costs of the action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

## COUNT II

## VIOLATION OF 15 U.S.C. § 1681e(b)

## (Per Se Inaccuracy — Balance Exceeds Credit Limit)

50. Plaintiff re-alleges and incorporates paragraphs 1 through 46 as if fully stated herein.

51. Section 1681e(b) requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible

accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

52. An inaccuracy under § 1681e(b) exists when a report contains information that is technically false or is "misleading in such a way and to such an extent that it can be expected to have an adverse effect." Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009).

53. As stated in paragraph 23 above, the Disclosure reports a balance of $7,541 on Plaintiff's Navy Federal Credit Union account (*9161) against a stated Credit Limit of $7,500, meaning the balance is reported as exceeding the credit limit by $41.

54. Reporting a balance that exceeds a credit limit—without notation of any approved over-limit status—is a per se inaccuracy. It conveys to any third-party reviewer that Plaintiff has exceeded his credit limit and is in default of his credit agreement, which is materially misleading to Plaintiff's detriment.

55. Additionally, the Apple Card account (*3568) reports a High Credit figure of $1,403 that exceeds the account's stated Credit Limit of $1,300 by $103. Equifax codes the High Credit column with Narrative Code 233 ("Amount in High Credit Column is Credit Limit"), yet the amount in that column ($1,403) exceeds the separately stated Credit Limit ($1,300). This internal contradiction is an inaccuracy on the face of the Disclosure.

56. Equifax lacked reasonable procedures to detect or prevent these inaccuracies. A basic data-integrity check comparing the Balance field to the Credit Limit field—or comparing the High Credit field to the Credit Limit field on the same account—would have identified these errors before the report was disseminated. The absence of such an elementary check is objectively unreasonable under Safeco, 551 U.S. at 68.

57. Equifax's violation was willful within the meaning of § 1681n, or alternatively negligent within the meaning of § 1681o.

58. As a result, Plaintiff is entitled to: (a) actual damages; (b) statutory damages per willful violation; (c) punitive damages; and (d) costs.

**COUNT III**

**VIOLATION OF 15 U.S.C. § 1681e(b)**

**(Misleading Reporting — Continued Charge-Off Notation on Paid-and-Closed Account)**

59. Plaintiff re-alleges and incorporates paragraphs 1 through 55 as if fully stated herein.

60. The Wells Fargo Card Services account (*4265) is reported with a Status of "Charge Off," a Charge Off Amount of $5,453, and an Activity Designator of "Paid and Closed."

61. Despite this account's designation as Paid and Closed, the Payment History grid continues to display "CO" (Charge Off) notations for January 2026 and February 2026—approximately two years after the initial charge-off date of June 2024 and well after the account is designated as paid and closed.

62. Reporting active charge-off notations in the Payment History grid for months that post-date the account's paid-and-closed status is materially misleading. A third-party reviewer examining this account would see ongoing charge-off activity, when in fact the account was satisfied and closed. This is precisely the type of misleading-by-omission-of-context

inaccuracy addressed in Pittman v. Experian Information Solutions, Inc., 901 F.3d 619, 629 (6th Cir. 2018).

63. This account bears Narrative Code 022 (Consumer Disputes—Reinvestigation in Process), confirming Equifax had actual notice of the disputed entry and yet the misleading Charge Off notations persist in the Disclosure.

64. Equifax lacked reasonable procedures to prevent the continued reporting of charge-off notations on accounts it had separately coded as Paid and Closed. This failure is objectively unreasonable.

65. Equifax's violation was willful within the meaning of § 1681n, or alternatively negligent within the meaning of § 1681o.

66. As a result, Plaintiff is entitled to: (a) actual damages; (b) statutory damages per willful violation; (c) punitive damages; and (d) costs.

## COUNT IV

## VIOLATION OF 15 U.S.C. § 1681i(a)(1)(A)

## (Failure to Conduct Reasonable Reinvestigation of Disputed Items)

67. Plaintiff re-alleges and incorporates paragraphs 1 through 63 as if fully stated herein.

68. Section 1681i(a)(1)(A) requires that, upon receiving notice of a dispute as to the completeness or accuracy of any item of information in the consumer's file, the CRA shall "conduct a reasonable reinvestigation to determine whether the disputed information

is inaccurate and record the current status of the disputed information, or delete the item from the file," generally within thirty (30) days. 15 U.S.C. § 1681i(a)(1)(A).

69. As established in paragraph 31 above, the Disclosure reflects Narrative Code 022 on the Apple Card (*3568), Navy Federal (*9161), Wells Fargo (*4265), Discover Card (*3221), FNB Omaha (*4736), and THD/CBNA (*6085) accounts, and Narrative Code 167 on the Apple Card account, confirming that prior disputes were received and processed by Equifax with respect to those accounts.

70. Despite receiving these disputes, Equifax failed to correct the balance-exceeds-limit inaccuracy on the Navy Federal account, failed to correct the High Credit exceeds Credit Limit inaccuracy on the Apple Card account, and failed to correct the continued Charge Off notation on the Paid and Closed Wells Fargo account.

71. A reinvestigation that leaves facially apparent inaccuracies—such as a balance exceeding a credit limit, or a High Credit figure larger than the stated Credit Limit—uncorrected is not a "reasonable" reinvestigation within the meaning of § 1681i. See Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997) ("The burden of reinvestigation falls squarely on [the CRA].").

72. Equifax's violation of § 1681i was willful within the meaning of § 1681n, or alternatively negligent within the meaning of § 1681o.

73. As a result, Plaintiff is entitled to: (a) actual damages; (b) statutory damages per willful violation; (c) punitive damages; and (d) costs.

## COUNT V

## VIOLATION OF 15 U.S.C. § 1681i(a)(5)(A)

## (Failure to Delete or Correct Unverifiable Information After Reinvestigation)

74. Plaintiff re-alleges and incorporates paragraphs 1 through 70 as if fully stated herein.

75. Section 1681i(a)(5)(A) requires that, if after reinvestigation disputed information cannot be verified, the CRA shall promptly delete that item of information from the consumer's file. 15 U.S.C. § 1681i(a)(5)(A).

76. The Apple Card account (*3568) bears both Code 022 (Reinvestigation in Process) and Code 167 (Consumer Disputes After Resolution). Code 167 indicates that the dispute cycle was completed. Despite this, the account continues to show a High Credit figure ($1,403) that exceeds the Credit Limit ($1,300)—an inaccuracy that either was not corrected or was reinserted after reinvestigation without proper notation under § 1681i(b).

77. If Equifax could not verify the accuracy of the balance and credit limit data on the disputed accounts through its reinvestigation, it was obligated to delete or correct those items. Its failure to do so violates § 1681i(a)(5)(A).

78. Equifax's violation was willful within the meaning of § 1681n, or alternatively negligent within the meaning of § 1681o.

79. As a result, Plaintiff is entitled to: (a) actual damages; (b) statutory damages per willful violation; (c) punitive damages; and (d) costs.

## COUNT VI

## VIOLATION OF 15 U.S.C. § 1681i(c)

## (Failure to Provide Notation of Dispute in Consumer Reports Following Reinvestigation)

80. Plaintiff re-alleges and incorporates paragraphs 1 through 76 as if fully stated herein.

81. Section 1681i(c) requires that, whenever a consumer disputes the completeness or accuracy of information in his file and the reinvestigation does not resolve the dispute, the CRA shall note the dispute in any subsequent consumer report containing the disputed information. 15 U.S.C. § 1681i(c).

82. The Apple Card account (*3568) reflects Narrative Code 167 (Consumer Disputes After Resolution), indicating the dispute was processed but not resolved to Plaintiff's satisfaction. To the extent Equifax furnishes third-party consumer reports containing the Apple Card account data without a notation that the information remains disputed, Equifax violates § 1681i(c).

83. Similarly, any of the accounts bearing Code 022 that have progressed to a completed reinvestigation without correction must carry a dispute notation in all subsequent third-party reports, or Equifax violates § 1681i(c).

84. Equifax's violation was willful within the meaning of § 1681n, or alternatively negligent within the meaning of § 1681o.

85. As a result, Plaintiff is entitled to: (a) actual damages; (b) statutory damages per willful violation; (c) punitive damages; and (d) costs.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Michael Tubbs respectfully requests that this Court enter judgment in his favor against Defendant Equifax Information Services, LLC and award the following relief:

86. Judgment in favor of Plaintiff and against Defendant on all counts;

87. Actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1) in an amount to be determined at trial;

88. Statutory damages of not less than $100 and not more than $1,000 for each willful violation of the FCRA, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

89. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) in an amount sufficient to deter Equifax from continuing its knowing and willful disregard of consumers' statutory rights;

90. Costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

91. Injunctive or declaratory relief ordering Equifax to provide Plaintiff with a complete, accurate, and non-truncated consumer file disclosure in compliance with 15 U.S.C. § 1681g(a)(1);

92. Such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Michael Tubbs hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Michael Tubbs

Michael Tubbs

Pro Se Plaintiff

10 Tanglewood Rd.

Dorchester, MA 02124

(734) 450-7960

documents583@gmail.com

Date: June 05, 2026

**EXHIBIT LIST**

Exhibit A: Equifax Consumer File Disclosure for Michael Tubbs, dated May 10, 2026, Confirmation No. 6130549094 (full 32-page report)